James C. O’Bbien, J.
This is an action to declare unconstitutional chapter 726 of the Laws of 1954, which amended section 2 of the Tax Law by adding thereto subdivision “ 6-a ”. This amendment was effective April 15, 1954, and reads as follows:
‘ ‘ 6-a. a. In addition to their meaning as provided in subdivisión six, the terms, ‘land,’ ‘real estate,’ and ‘real property,’ as used in this chapter, include all the forms of housing which are adaptable to motivation by a power connected thereto or which may be propelled by a power within themselves and which are or can be used as a house or living’ abode or habitation of one or more persons, or for business, commercial or office purposes, either temporarily or permanently, and commonly called and hereafter referred to as ‘ trailers ’; except (1) transient trailers which have been located within the boundaries of a tax district for less than sixty days and (2) trailers which are for sale and which are not occupied.
“ b. Trailers shall be assessed to the owners of the real property on which they are located.”
The two corporation plaintiffs are stated to be composed of owners of trailer camps within the State, of New York. Neither of them has demonstrated any financial interest in any property within the town of Chili, of which town defendants are officers. In fact so far as we know neither of them owns any land or any mobile home which is or may be affected by the statute. They should not be permitted to maintain this action when their objection to it necessarily must be that it might affect someone else. (O’Kane v. State of New York, 283 N. Y. 439, 499; People ex rel. Moffett v. Bates, 276 App. Div. 38, 40, affd. 301 N. Y. 597; Thompson v. Wallin, 276 App. Div. 463, affd. 301 N. Y. 476; Bull v. Stichman, 273 App. Div. 311, affd. 298 N. Y. 516.)
Accordingly the motion of defendants to dismiss the complaint as against the two corporate plaintiffs is now granted with an exception to each of these plaintiffs.
*763 I briefly review the evidence and the facts which I find,deeming them essential to my decision.
Plaintiff Manhard is the record owner of land on the Seottsville Road, in the town of Chili, Monroe County, New York. On this land there are located sites for 13 ‘ ‘ mobile homes ’ ’, as are now called, what formerly were designated “ trailers ”. Twelve of these 13 homes are owned by various persons who pay rent for the use of the land and the facilities and accommodations there available. The 13th is owned and occupied by one Grillen who is the beneficial owner of the camp. It appears that he purchased the trailer camp from Manhard, pursuant to a written land contract made and dated 1953. G-illen has not yet received the deed.
Of these 13 mobile homes 7 are “up on blocks” and have an outside wall. The other 6 rest on their wheels. All 13 are equipped with wheels to make locomotion possible and reasonably convenient. All mobile homes within this State, including those in the town of Chili with which we are immediately concerned, receive various utilities and conveniences at the sites where they variously are located and while they are thus serviced they have ipso facto an attachment to the land.
One of the questions in the case concerned itself with the mobility of these mobile homes. The contention of the plaintiffs was that they could be moved quickly and without much ceremony or the expenditure of great time or effort. Defendants on the other hand claimed that there was involved in moving them a substantial undertaking both in time and effort. The estimates of the amount of time required to prepare a trailer for moving varied from 20 minutes to 5 hours. I find that in ordinary cases at least 3 hours would be required to prepare the typical mobile home before it starts its journey from one camp site to another. To be moved it is necessary for each of them to be hitched to a truck or tractor which, then hauls the mobile home to its new destination. Only a licensed mover can move them. A permit is required for such moving in some cases and a considerable degree of limitation is imposed in some classes of homes and in different localities on such movement as to when and under what circumstances such a move can occur. This all in the interests of public safety.
Mobile homes are becoming larger, more pretentious and more luxurious each year. Their length, width and weight are increasing; the price has increased considerably in recent years, the number of rooms has increased and the luxury of the inside fittings and equipment is also greater. These changes are some indication that the manufacturers of these “ homes ” are more *764 concerned with providing additional comforts to be enjoyed by the occupants while the homes are stationary and are being occupied as a permanent or semi-permanent residence than with making them quickly and easily moved from one place to-another.
No one denies the fact that many of the occupants of these homes remain on one site for long intervals, sometimes several years. In other instances they remain a very much shorter period, sometimes only a few days. While they occupy these homes those persons are afforded and enjoy police protection, fire protection, public utilities, school facilities and the like. The same facilities are afforded them as are available to the persons who occupy homes of the conventional type.
Up to the time that this 1954 statute was passed, these privileges were enjoyed without the imposition of any tax. Taxes imposed upon them were held to be void. (Erwin v. Farrington, 285 App. Div. 1212.) This statute is an attempt by the Legislature to require, indirectly, the occupants of these homes to contribute to the expense of the privileges which everyone in their tax district enjoys.
Two Special Term decisions in well reasoned opinions have held these statutes to be constitutional, viz.: Matter of Beagell v. Douglas (2 Misc 2d 361); Matter of Feld v. Hanna (4 Misc 2d 3). Two Special Term decisions in equally well reasoned opinions have held to the contrary. (Barnes v. Gorham, 12 Misc 2d 285; New York State Trailer Coach Assn. v. Steckel, 208 Misc. 308, revd. on other grounds 3 A D 2d 643.) The Special Terms which found the statute constitutional stated that whether taxes should be levied only upon real or also upon personal property, the method of tax collection and the like, were subjects concerning which the Legislature had exclusive jurisdiction; that what shall be considered real estate for tax purposes is to be determined by the Legislature and by the Legislature alone. (People v. Chambers, 1 Misc 2d 990; Matter of New York Tel. Co. v. Ferris, 257 App. Div. 415; Interstate Lien Corp. v. Schmidt, 180 Misc. 910.)
The two Special Terms which held the statute unconstitutional took the position that there was a limit beyond which the Legislature could not reasonably go in determining what is real property for the purpose of taxation; that in this instance the Legislature had exceeded such limit in that it had denominated real property something which certainly is personal property and has none of the characteristics and qualities of real property. In both opinions it is contended that to tax the land of *765 the owner of the trailer camp because of the presence of the trailer, which, itself, is denominated real estate, is unconstitutional, citing Hoeper v. Tax Comm. (284 U. S. 206). Also these two Special Term decisions set out many situations under which incongruous results could be reached in the assessment and collection of taxes under, and in the administration of, the statute now attacked.
First, a comment concerning Hoeper v. Tax Comm. (284 U. S. 206, supra). This was a case in which husband and wife were gainfully employed, separately; each received a taxable income of his own and each filed in the State of Wisconsin a separate tax return. Under the Wisconsin statute the income assessor charged against the husband a tax computed on the combined total of the husband’s and the wife’s separate income, whereupon the husband had to pay a higher tax than if he had paid the total of two taxes each levied separately against their separate incomes. The husband paid the tax under protest and sued to recover the same. The statute was held unconstitutional. The opinion contains the following statement (p. 215): “ any attempt by a state to measure the tax on one person’s property * * * by reference to the property * * * of another is contrary to due process of law”. Although this statement seems appropriate, some consideration indicates that it does not and was not intended to apply here. It must be conceded that the amount of the tax levied pursuant to this statute (Tax Law, § 6-a) on the property of the owner of a trailer camp would be higher (because of its increased valuation for tax purposes) by reason of the presence upon the land of trailers or mobile homes, owned by persons other than the person paying the tax, than it would be without such occupation. Even without the benefit of the statute, if a land owner rents his land for occupation by mobile homes and derives a revenue therefrom that fact certainly should and probably would to some extent increase the assessed valuation of his property. Also there are many instances in which tax assessors properly fix the value of commercial property in direct relation to the income produced by the property, that is the amount received by the taxpayer from the tenant occupant by way of rental, and, accordingly, the valuation is fixed in relation to the income produced by the property, which income very frequently is a flat percentage of the gross income of the business transacted on the property by the tenant.
In People ex rel. Hudson Riv. Day Line v. Franck (257 N. Y. 69, 71) it was held that although at common law a building *766 erected upon the land of another, and removable at the end .of a term, may be personal property, it may still'be classified as real property so far as the tax law is concerned. (See, also, Matter of New York Tel. Co. v. Ferris, 257 App. Div. 415, 417, 419, affd. 282 N. Y. 667; Levy v. McClellan, 196 N. Y. 178; Ætna Life Ins. Co. v. Aird, 108 F. 2d 136; Corning v. Town of Ontario, 204 Misc. 38.)
So, in all the foregoing cases the valuation which assessors may lawfully make is to some extent determined (and so is the resulting fax) by reference to the property of another. But it seems clear that to hold such a result unconstitutional was not intended by the Hoeper case.
There are many instances in which buildings on land are owned by one person and the land by another. In her brief the learned Assistant Attorney-General states that a well known instance of such is the Rockefeller Center group of buildings which are owned by one and the land by another. She does not say but I assume that the taxing authorities impose all the real estate taxes upon the land.
It must be conceded that in theory, at-least, in the administration of this section, many incongruous situations could result if the law be administered unfairly or unrealistically or by assessors who are more aggressive than intelligent, some of which are pointed out in the opinions of the two Special Terms holding the statute unconstitutional.
Also it is true that the day for determining assessed value of real property is June 1 of each year, and the fact that trailers are on the land on that day or have left two days previously is theoretically a matter of great importance. However, in truth and in fact-the single (or the group of three) town assessors cannot possibly view each and every piece of real property (whether or not they be trailer camps) on that precise date. Some leeway always has been allowed the assessors-in making their valuation of real property as of that day and that same leeway would have to be allowed in the case of trailers. Also it must be remembered that if an assessed valuation be unfair or excessive there is a provision in the law which permits a protest and a resulting correction.' Inequalities' can occur in instances which do not involve trailers. If on a- vacant lot one commences on May 1 to build a conventional house and the visit for inspection by the assessor to that lot is made on or about April 30, and he observes no construction, • the valuation of. the land for tax purposes is as vacant.land. By August 1 the house will have been built and a substantial addition to the value of the land has occurred (entirely exempt from tax for *767 the current year including the school tax which is due in the Fall of the year). I do not believe, however, that the possibility of a situation such as this has ever caused a court to declare the Tax Law unconstitutional. Moreover the fact that taxes are harsh, unreasonable or cause a hardship does not make the statute unconstitutional. (People ex rel. Hatch v. Reardon, 184 N. Y. 431.)
Although some of the various incongruous situations might sometime occur, at the present time such is merely a possibility. At the time this action had been tried the law had been in effect for over three years. There was no instance proved or cited by plaintiffs of any unfair application of the statute nor of any of the incongruous situations above referred to. No proof was m.ade of a trailer having been sold as real estate for nonpayment of taxes, nor of any home being assessed on land unless it was located there on status day. Not one of the various “practical problems” which was a concern of two of the learned Justices who had considered this subject has ever in fact arisen.
Especially and particularly it should be noted that neither plaintiff Manhard nor either of the corporations named as plaintiffs has suffered any loss, damage or inconvenience by reason of the administration or enforcement of the statute other than the necessity of payment by .the owner of the land of increased taxes by reason of the fact that his land is occupied by trailers. Under these circumstances the plaintiffs have no right to complain because they have suffered no loss, damage or hardship which entitles them to require a court to take the grave step of declaring the statute unconstitutional. Headley v. City of Rochester (272 N. Y. 197, 204) where the court says: ‘ ‘ Regardless of the form of action in which relief is sought, the courts will not declare a statute unconstitutional * * * ‘ One cannot invoke to defeat a law an apprehension of what might be done under it and, which if done, might not receive judicial approval. ’ (Lehon v. City of Atlanta, 242 U. S. 53, 56.) ” (Emphasis supplied.)
These trailers for all practical purposes are homes. They can be moved but so can any building. Certainly it is easier to move them than it is to move a conventional house. The degree of mobility is relative. They rest on land in a camp and sometimes for a very considerable interval of time, in some cases it is many years. They are just as much a piece of real estate as the conventional home and should be taxed accordingly. (Corning v. Town of Ontario, 204 Misc. 38, supra.) I hold that the plaintiffs have no standing to attack the constitu *768 tionality of the statute because they have not proved that they have sustained or are even threatened with any damage or loss by reason of it. I hold that the statute is constitutional and reasonable and should be upheld.
The complaint is dismissed with costs.