STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| **Ploof & Loney ZBA Application** | } | **Docket No. 104-5-06 Vtec** |
|  | } |  |
| **Ploof Notice of Violation** | } | **Docket No. 247-10-06 Vtec** |
|  | } |  |

## Interim Decision on Partial Summary Judgment Motion

Richard and Robin Ploof own a recreational vehicle that they maintain on property owned by William and Wanda Loney along the Georgia shore of Lake Champlain. They wish to replace their current recreational vehicle with a slightly larger one. Their request for a zoning permit for the larger recreational vehicle was denied, leading to the first appeal now pending before this Court. Appellants filed the second appeal with this Court after the Town Zoning Administrator gave notice that the Ploofs' current recreational vehicle was impermissibly located within the side yard setback. Both appeals focus our attention upon a principal legal question: whether the current or proposed recreational vehicle is a "structure" as that term is used in the Town of Georgia Zoning Regulations ("Regulations"). We address that principal legal question in this Decision.

In the first appeal, Docket No. 104-5-06 Vtec, Appellants Richard Ploof, Robin Ploof, William Loney, and Wanda Loney (hereinafter collectively referred to as "Appellants") appealed from a decision of the Town of Georgia ("Town") Zoning Board of Adjustment ("ZBA") dated April 17, 2006, denying their application to replace an 8-foot wide by 28-foot long movable, wheeled recreational vehicle, consisting of 224 square feet of living space, with a 280 square-foot recreational vehicle[1] on a tract of land located at 2869 Georgia Shore Road in the Lakeshore ("L-1") zoning district. In the second appeal, Docket No. 247-10-06 Vtec, the same Appellants appealed from a decision of the ZBA dated September 28, 2006, denying Appellants' appeal of a Notice of Violation ("NOV") dated May 11, 2006, which concluded that the current recreational vehicle was unlawfully located within the side yard setback.

---

[1] Appellants' application suggests four alternate dimensions for the replacement recreational vehicle: (1) 8-foot wide by 35-foot long; (2) 10-foot wide by 28-foot long; (3) 11½-foot wide by 24-foot long; and (4) 12-foot wide by 17-foot long. All proposals would sit on a concrete pad of similar dimensions, abutting the boundary line to the north.

Appellants are represented by Marc E. Wiener, Esq.; the Town is represented by Will S. Baker, Esq.; and Interested Persons Richard E. Carroll, Judith J. Carroll, Laura J. Carroll, Esq., Mark Cyr, Kimberly Cyr, Gary Trivento, and Judith Trivento represent themselves.

Docket Nos. 104-5-06 Vtec and 247-10-06 Vtec were consolidated on November 17, 2006, pursuant to a stipulation of the parties. Now pending for the Court's consideration is the Town's motion for partial summary judgment on Question 1 of Appellants' Statement of Questions in both dockets. Appellants filed memoranda and affidavits in opposition to the Town's pending motion.[2] Interested Person Laura J. Carroll filed a legal memorandum in support of the Town's motion. The Town seeks an affirmative answer to the principal question of whether the current and proposed recreational vehicles, as used in the past and proposed to be used in the future, are "structures" as that term is defined in the Town of Georgia Zoning Regulations. For the reasons detailed below, we conclude that these recreational vehicles constitute "structures" under the Georgia Zoning Regulations.

## Factual Background

The following material facts are gleaned from the filings in both dockets. Where disputed, we have viewed the material facts in a light most favorable to Appellants.

1. William and Wanda Loney own a tract of land located at 2869 Georgia Shore Road in the Town's L-1 Lakeshore zoning district.

2. The Loneys' tract of land is bisected by the Georgia Shore Road, with an area of approximately 60′ by 60′ lying on each side (easterly and westerly) of the right-of-way.[3]

3. The westerly portion of the Loneys' tract is improved with a seasonal camp owned and used by the Loneys.

---

[2] The Town first moved only in Docket No. 104-5-06 Vtec for summary judgment on all disputed issues. See Town's Mot. for Summ. J. filed September 29, 2006. On November 21, 2006, the Town moved to alter and convert its previous motion to a motion for partial summary judgment in both of the consolidated dockets, on the sole question of whether the existing or proposed recreational vehicles constitute a "structure" as that term is defined in the Regulations. While the caption in Appellants' responsive filings only references Docket No. 104-5-06 Vtec, we have considered Appellants' filings as being in opposition to the Town's motion for partial summary judgment in both of the consolidated dockets.

[3] Whether the tract constitutes one lot, or whether instead the right-of-way subdivides the tract into two lots, is a matter of dispute we are not asked to address in the pending motion. Even if the tract is held to be one lot, it does not meet the one-acre minimum lot size requirement for the L-1 zoning district.

4. The easterly portion of the tract is improved with a concrete pad or slab that abuts the northerly side boundary, upon which sits a movable, wheeled recreational vehicle ("RV") owned by the Loneys' daughter and son-in-law, Robin and Richard Ploof.

5. The existing RV is eight feet wide and twenty-eight feet long, with an additional two-foot hitch extension. The concrete pad is slightly larger in area than the RV.

6. Appellants have installed utility hook-ups near the concrete pad. The RV is connected by a flexible hose to an underground concrete septic tank. It is connected by a garden hose to a water supply, and is also connected to a propane tank and to electric service through the nearby hook-ups.

7. While it is possible to disconnect the utilities connections and move the trailer with the aid of a truck, the RV has not been moved significantly since it was first placed on the land in 1993.[4]

7. The current RV was first placed on the land in 1993, replacing a smaller trailer that had been on the land since 1977. It is unclear whether another trailer was on the land prior to 1977.

8. The concrete pad and utility hook-ups were constructed and installed on the land sometime between 2001 and 2003.

9. The Ploofs occupy the RV on weekends during summer and early fall (May 1 through November 30). In the past, the Ploofs have disconnected the utilities and stored the RV on the property during the winter months. While the current RV was moved on one or more occasions, including being moved to a neighbor's property while the concrete pad was constructed, there was no evidence presented that the current RV has left the property, other than for the concrete pad construction, in the last 13 years.

10. The current RV was registered with the Vermont Department of Motor Vehicles ("DMV") when it was first placed on the land in 1993. The Ploofs subsequently allowed the registration to lapse, but renewed the registration after the ZBA issued its denial of their appeal in 2006. The RV remains currently registered with DMV.

---

[4] While Appellants appear to concede that the RV "has remained in its present location since placed on the lot in 1993," Appellants' Mem. in Opp'n to Mot. for Summ. J. at 2, Appellants note in their supplemental memorandum, filed with the Court on December 7, 2006, that the RV was moved at least once to allow for the installation of the concrete pad upon which it now rests.

3

11.     In the first appeal, Appellants sought zoning approval to replace the current RV with a slightly larger RV.  While their application does not expressly state it, the hand-drawn diagrams evidence that, depending upon the dimensions of their new RV, they would install a new concrete pad abutting the northerly boundary that would be of dimensions similar to the new RV.

12.     There is no representation as to whether the new RV would remain on the Loney property, as had the current RV, or would only be located on the property on a seasonal basis. The concrete pad and utility hook-ups would remain on the property.

13.     While there is no explicit representation in any parties' statement of undisputed material facts, the Court infers from their representations that the current and proposed RV's have living, sleeping, eating, cooking, and sanitation facilities within them.

## Discussion

The Georgia Zoning Regulations establish where a "structure" may be located on a parcel of land.  In the L-1 zoning district, structures on a parcel of less than one acre must respect a 10-foot side-yard setback.  Regulations § 3140.4.  Since it is undisputed that the concrete pad and RV's siting on it abut the northerly boundary, Appellants cannot comply with this zoning requirement.  They have chosen not to seek a variance from this requirement.  Rather, Appellants assert that their current and proposed RV's are not governed by § 3140.4.

The Town does not dispute that § 3140.4 only governs allowed structures and their permitted uses.[5]  But the Town disputes Appellants' assertion and seeks an affirmative answer to the question of whether the Ploofs' current and proposed RV's constitute "structures" as that term is defined in Regulations § 2010.99.1.  That provision defines a "structure" as:

> An assembly of materials for occupancy or use constructed or erected with a fixed location on, above, or below the ground or water.  Examples of structures include but are not limited to: buildings, swimming pools, mobile homes, signs, fences, and retaining walls.  Commercial satellite dishes and telecommunications facilities are also structures.

---

[5]  Section 3140 speaks primarily to permitted uses, two of which are a "seasonal dwelling" and a "single family dwelling."  The term "structure" in only used in § 3140.6, which speaks to the "special provisions" that must be followed in the L-1 district.  However, the term "structure" resurfaces when one seeks out the definition of "dwelling," which is defined as a "structure [or portion thereof] designed to be used . . . as a residence [whether for 7 months or longer] by a single family and having sleeping, eating, cooking, and sanitation facilities."  Regulations §§ 2010.10 and 2010.24.

4

We conclude that each RV is an "assembly of materials for occupancy or use." Our determination of whether either constitutes a structure depends on whether it has a "fixed location."

While Appellants contend that the current RV is movable, they do not dispute that it has not left the Loney parcel, other than for the construction of its concrete pad, for any significant period of time in the last 13 years. The Ploofs use it during the summer and fall and store it at the same site during the off season. The Town notes that the Ploofs come to the Loneys' property to stay in their RV, "which has been fixed in its current position for many years." Town's Mot. for Summ. J. at 4. Appellants dispute this point only in noting that the RV was moved when the concrete pad was installed. The concrete pad and utility hook-ups have remained on the property since their construction and installation.

Even after we view this set of disputed facts wholly in a light most favorable to Appellants, see Christman v. Davis, 2005 VT 119, ¶5, we do not believe that an occasional moving of the RV over a span of thirteen years has a material impact upon our legal analysis. The undisputed facts remain that the RV is not moved for any significant amount of time and is used as a seasonal dwelling exclusively at the Loney property. The concrete pad and utility hook-ups have been constructed and installed in a fixed location, in the side yard setback established by Regulations § 3140.4. The RV, with its concrete pad and utility hook-ups, has been consistently used by the Ploofs as a seasonal dwelling for the past several years. These facts are undisputed and material to our legal conclusion that the RV and its support structures must comply with the Georgia Zoning regulations.

We also do not find compelling Appellants' representations, undisputed by the Town, that the RV has wheels, and that the septic, water, and propane connections can be disconnected "within a few minutes," Aff. of Richard Ploof at ¶3, so that the trailer could be moved with the aid of a truck to a different location. Appellants argue that because the trailer can be moved, it cannot be considered to have a fixed location, regardless of how long it may have remained in one place. The fact that Appellants have established a fixed location for the RV, by constructing a concrete pad and installing utilities hook-ups, has assisted us in reaching the conclusion that the RV and its support structures are used as a seasonal dwelling governed by Regulations § 3140.4.

Appellants also note that Regulations § 5020 deals specifically with "recreational vehicles," and that Regulations § 5020.2 allows a "legally registered travel or camper trailer or

5

coach . . . [to be] placed upon an undeveloped lot and used for limited seasonal occupancy" provided it meets certain requirements, including the requirement that it "shall not be permanently attached to the land." Appellants point out that "[n]owhere in this section does a recreational vehicle become a 'structure,' nor does the ordinance require such vehicles to [] periodically be moved from [their] location." Appellants' Mem. in Opp'n to Mot. for Summ. J. at 2. Furthermore, Appellants explain the inclusion of "mobile homes" in the non-exhaustive list of structures, and distinguish them from their recreational vehicle, by noting that the term "mobile home" is defined in Regulations § 2010.54 as a "residential dwelling . . . designed to be a permanent residence."

While it is indisputable that the Ploofs' RV is a "recreational vehicle" as that term is defined in § 5020, its classification does not exempt it from complying with the other applicable provisions of the Regulations. In fact, §§ 5020.1, 5020.2 and 5020.3 all contain an identical mandate: that the use of the "legally registered travel or camper trailer . . . shall not conflict with any [other] provisions of" the Regulations. Thus, having concluded that the current and proposed RVs are at a fixed location, their use must be in conformance with Regulations § 3140.

We note that recreational vehicles, camper trailers, and the like are neither inherently mobile nor inherently fixed, but may be either fixed or mobile depending upon "the type of construction . . ., the foundation on which they rest, connections to necessary utilities, and the use made of them." City of Rutland v. Keiffer, 124 Vt. 357, 362 (1964). We conclude that based on these factors, the Ploofs' RV has a fixed location and thus is a "structure" as that term is defined in Regulations § 2010.99.1.

Our holding here so closely follows the reasoning of our Supreme Court in In Re Willey, 120 Vt. 359 (1958) that the following lengthy quotation from that case seems appropriate:

> There can be no doubt that while being drawn upon a highway a trailer coach would be personal property as would any other vehicle. As such it would not be subject to the provisions of the Montpelier Zoning Ordinance. Here, however, we have a trailer coach, removed from the highway, situated upon land leased by the trailer's owner, connected to the land by various utilities, used as a home by the owner and his family, and which has not been mobile during such period of use on the land. Does the trailer then, under the facts in the instant case, undergo such a transmutation as to alter it in character from personalty to realty so as to become a single family house under the terms of the Montpelier Zoning Ordinance.
>
> . . . .

Mr. Willey's house trailer was mobile when it was brought to the lot he had leased. But the essential facts are that it was built for human habitation, has all the attributes of a dwelling, was used as such, and became fixed to the realty by various connections. The possibility of its future mobility might have been reduced by the use of a different foundation. But the question before us is not one of possible future use, but its actual use at the time the application was granted by the Board of Adjustment, and Mr. Slayton's appeal was taken.

In the case of Corning v. Town of Ontario, 204 Misc. 38, 121 N.Y.S.2d 288, 291, the facts differ from the case at hand in that in the New York case the trailer owner was appealing from having his trailer classified as a building, while in the case we are considering the trailer owner is seeking that classification. But the words of the New York court apply to both situations: 'Plaintiffs claim that the trailer is not a building because it is something mobile. Mobile it was when used upon the highway, but mobility ceased when it was removed from the highway, attached to the soil and used as living quarters. A metamorphosis has occurred; the mobile vehicle has become a fixed residence. When traveling upon the highway it obviously was not subject to zoning regulations, but that does not mean that it may not become subject to such regulations when occupied as a residence at a fixed location. A hydro-plane when flying through the air is not a vessel subject to admiralty jurisdiction. But when floating upon navigable waters it becomes a vessel subject to such jurisdiction . . .. House trailers when located in a camp, still resting on their wheels, with only temporary utility connections and owned by others than the owners of the land, have been held not taxable as real property . . ..  But where they are affixed to the land by means of electric wires, water pipes or wooden supports, and there is evidence that they are to be left permanently at the location they may be assessed and taxed as part of the real property.'

Id. at 363–365.

The Ploofs' use of their RV on the Loneys' property and their establishment of a fixed location for it caused the "transmutation" of their RV from a mobile vehicle to a fixed structure, used as a seasonal dwelling.  It thus must comply with Regulations § 3140.  Due to its past use, the fact that the RV once was and is again now registered with the DMV does not negate this transmutation.  Nor does the possibility that it could be moved in the future.  Assuming that the Ploofs intend to use the replacement RV in a similar manner, we also classify it as a "structure" that must conform to the Regulations.

Accordingly, based on the foregoing, we hereby **GRANT** the Town's Motion for Partial Summary Judgment in both pending dockets. In doing so, we specifically find that the Ploofs' current and proposed recreational vehicles have been and will be at a fixed location on the land, and thus constitute "structures" as that term is defined in the Regulations.

7

Both pending appeals shall now be set for trial.  The Court will conduct a pre-trial conference pursuant to the Notice of Hearing that accompanies this Decision.  The parties should be prepared at that conference to discuss the issues that remain to be tried in each appeal, the needed length of trial and the available dates on their and their witnesses' calendars during the months of March and April, 2007.

Done at Berlin, Vermont this 13th day of December, 2006.

_____
Thomas S. Durkin, Environmental Judge